**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

CHRISTOPHER HARRIS, II,

     *Plaintiff*,               CASE NO. 16-CV-10778

v.                       DISTRICT JUDGE THOMAS L. LUDINGTON
                          MAGISTRATE JUDGE PATRICIA T. MORRIS

ANTHONY WICKERSHAM,

     *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTIONS TO**
**AMEND AND FOR INJUNCTIVE RELIEF**
(Docs. 10, 14, 15, 16, 17, 18, 23, 24)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that:

1. Defendant's Motion to Dismiss (Doc. 10) be **DENIED AS MOOT.**

2. Plaintiff's Motion to Suspend and/or Terminate and Amend to Include Party of Responsibility to be Held Accountable (Doc. 14) be **GRANTED IN PART**, and Plaintiff be granted leave to amend his complaint to remove Wickersham as a party; however Plaintiff's claim against Sanborn should be **SUA SPONTE DISMISSED**;

3. Plaintiff's Motion to Amend (Doc. 15) be **DENIED**;

4. Plaintiff's Motion for Injunctive Relief (Doc. 16) be **DENIED**;

5. Plaintiff's Motion for Relief (Doc. 17) be **DENIED**;

6. Plaintiff's Motion for Emergency Relocative Relief (Doc. 18) be **DENIED**;

7. Plaintiff's Motion to Grant Relief (Doc. 23) be **DENIED**;

8. Plaintiff's Motion to Amend (Doc. 24) be **GRANTED IN PART AND DENIED IN PART**, and Plaintiff be granted leave to amend his complaint to add allegations that his Eighth Amendment rights were violated on May 3, 2016, and to add Deputies Masoya, Zaliwski, Medlow, Dupuis, Medlow, Marszhke, Cooney, Montgomery, Mada J., Duda, and Sergeant Stanley as Defendants. Plaintiff should be denied leave to add allegations regarding the deprivation of Plaintiff's religious needs, and should be denied as it seeks to add Sanborn, Lieutenant Larry Duda, Sergeant Scott Schulte, Sergeant John Glass, and Deputies Scott Campau, Ajini, Ibranovich and Lerwick as defendants.

## II.   REPORT

### A.   Background

Plaintiff Christopher Harris, II is a state prisoner who is currently incarcerated at the Macomb County Jail in Mount Clemens, Michigan. On March 1, 2016, Plaintiff filed a *pro se* civil rights complaint apparently under 42 U.S.C. § 1983, alleging that his constitutional right to due process was violated by the denial of access to the courts "due to ineffective and insufficient legal materials." (Compl., Doc. 1, at ID 3.) Plaintiff further states that his constitutional rights were repeatedly violated by "apparent intentional patterns of practices of deliberate indifference with malicious and sadistic intentions to hinder and deny lawful practices and legal conduct which subjected me to the repetitious violation of my 8th amendment and constitutional rights violation of cruel and unusual punishments and intentional inhumane terroristic tortures commonly practiced by the employees of Anthony M. Wickersham, the Macomb County Sheriff." (*Id.*) Plaintiff seeks an order requiring Defendant

2

Anthony M. Wickersham ("Defendant" or "Wickersham") "to provide considerable access to [the] law library . . . scheduling materials and legal website access with copying and printing capabilities." (*Id.* at ID 3-4.) He also seeks compensatory and punitive damages. (*Id.* at ID 4.) United States District Judge Thomas L. Ludington has referred all pretrial matters to the undersigned magistrate judge. (Doc. 11.)

On March 31, 2016, Defendant filed a motion to dismiss, arguing that Plaintiff's complaint fails to state a claim because it does not plead any particularized facts indicating that Defendant acted in an unlawful manner. (Doc. 10.) Defendant also argues that he is not liable under the doctrine of *respondeat superior* under 42 U.S.C. § 1983. (Doc. 10, at ID 42-44.) Thereafter Plaintiff filed seven motions: (1) a Motion to Suspend and/or Terminate and Amend (Doc. 14) on April 11, 2016; (2) a Motion to Amend Civil Action for the Inclusion of Multiple Parties (Doc. 15) on April 12, 2016; (3) a Motion for Injunctive Relief (Doc. 16) on May 2, 2016; (4) a Motion for Relief (Doc. 17) on June 2, 2016; (5) a Motion for Emergency Relocative Relief from Custody (Doc. 18) on June 2, 2016; (6) a Motion to Grant Relief (Doc. 23) on June 14, 2016; and (7) a Motion to Amend (Doc. 24) on June 29, 2016. Defendant filed responses to the first four motions. (Docs. 19, 20, 21, 22.)

Plaintiff's first two motions seek to amend his complaint, dismissing Wickersham as a party and adding Operations Administrator Michelle Sanborn, Lieutenant Larry Duda, Sergeant Scott Schulte, Sergeant John Glass, Officers Campau, Ajini, Dupuis, Lerwick, and other unidentified officers as defendants. (Docs. 14, 15.) Defendant concurs in the request to dismiss Wickersham as a party. (Docs. 19, 20.)

3

Plaintiff's first motion for injunctive relief seeks a personal protection order against the Macomb County Sherriff's Office, removal from Macomb County Jail, and transfer to the Federal Bureau of Prisons. (Doc. 16.) Plaintiff alleges that several individuals employed [at Macomb County Jail] seek my silence by injury or death." (Doc. 16 at ID 61.) He explains that this conclusion was derived from

> the repetitive practices of cruel indignities, retaliatory actions of authoritative abuses, departmental misconducts, harassments, antagonisms, medical negligence, physically threatening, intimidative [sic] practices, racial intolerances [sic], malicious and sadistic sanctions, disciplines and punishments, departmental terrorism, deliberate indifference to religious intolerances [sic] as perpetrated by officers and administrators of the Macomb County Sheriff's department, Macomb County Jail, [?,] due to the historically deficient quality of life practices and suspicious and mysterious casualty [sic] and injuries, sustained by inmates in the Macomb County Jail . . . .

(Doc. 16 at ID 60-61.)

Plaintiff's second, third, and fourth motions for injunctive relief allege that he was assaulted on May 3, 2016, by the following employees of the Macomb County Sheriff's Department: Sergeant Stanley and Deputies Zaliwski, Medlow, Duda, Montgomery, Mada J., Cooney, and Marszhke. (Docs. 17, 18, 23.) The clearest description of the events that allegedly transpired is found in a letter attached to Plaintiff's third motion for injunctive relief:

> Officer Zaliwski called me to yell out that I shut the fuck up and be a good boy after only asking why we have not been able to go to the law library. So I reported him to his superiors and on May 3rd 2016 during the afternoon shift I was written up for having a crutch which had a screw with a point I was handcuffed behind my back taken into the elevator and when I'd been brought into booking holding Cell 9[,] I was beaten bloody[,] kicked and punched about my face head and body by multiple "white" deputies. Most of whom I'd written grievance letters on whom [sic] beat and kick [sic] and punched me as I lay face down on my stomach handcuffed at my back all while being tazered [sic] multiple times by Sergeant Stanley and being called a stupid motherfucking nigger.

4

(Doc. 18 at ID 77.) Plaintiff describes this alleged assault as a failed attempt on his life, (Doc. 17, at ID 67), alleges that he has been "administratively selected for annihilation," (Doc. 17, at 67), and states "I know for a fact that they intend to murder me because I wish to press charges against them all I am running out of time I know what I know and it is to [sic] much and many of them are afraid of what I may say or do. But not as afraid as I am of what they may say or do! They manufacture charges, plant evidences. [sic] And they will kill me!" (*Id.* at ID 78.) Plaintiff also alleges that the grievance procedure is non-functional, (Doc. 17, at 66), that his injuries from the May 3, 2016, incident have been wrongfully neglected, (Doc. 23, at ID 101), and that he has been denied "time and space for religious activities, pastoral or celebrant visits, community involvement, observance of holy days and access to religious literature and study materials." (Doc. 17, at ID 67.) Plaintiff states that he has been housed in solitary confinement for ninety days. (Doc. 17, at ID 69.)

Plaintiff seeks a variety of relief in his motions, including the creation of a police report and filing of criminal charges against those involved in the May 3 incident, (Doc. 17, at ID 67); the dissolution of Plaintiff's sentence or placement in "relocative protective custody," (*Id.* at ID 66); intercessory relief, (Doc. 18, at ID 73); "removal from [Macomb County Jail] to be placed in an [sic] safer environment," (Doc. 18 at 75); transfer to "the federal authority of the state of Michigan," (Doc. 23, at ID 98); and "[a] full investigation by federal authorities into the patterns of practices, the deliberate indifferences all conducts and behaviors of all employee members of the Macomb County Sheriff's Department/Macomb County Jail to include the events of May 3rd 2016." (Doc. 23, at ID 99.)

Defendant argues that Plaintiff's first motion for injunctive relief should be denied because it lacks factual support demonstrating that his life is at risk, the claim is not likely to be successful on the merits, and it is against public interest for the court to interfere with prison administration by ordering the transfer of a prisoner. (Doc. 21.) With regard to the second, third, and fourth motions for injunctive relief, Defendant asserts that investigation has revealed that on May 3, 2016, a metal crutch, sharpened into a stabbing weapon was found in Plaintiff's cell. (Doc. 21, at ID 92.) Plaintiff was placed in handcuffs and removed from his cell and escorted to Holding Cell # 9 as a result of this major rules infraction. (*Id.*) After arriving at Holding Cell # 9,

> Plaintiff was instructed to lay face down on the floor while handcuffs were removed, and to remain there until the cell door was closed and locked. Plaintiff declined to follow these simple instructions and he began rising from the floor to turn on the deputy who had just a moment before removed the handcuffs. As he did so, a second deputy stepped forward and deployed his tazer [sic] once, effectively ending Plaintiff's resistance.

(*Id.* at ID 92-93.) Defendant asserts that this chain of events does not entitle Plaintiff to injunctive relief and his recourse, if any, lies in a civil action arising under 42 U.S.C. § 1983. (*Id.* at ID 93.)

Plaintiff's final motion seeks to amend his complaint to add the following defendants: Michelle Sanborn; Lieutenant Larry Duda; Sergeant Scott Schulte; Sergeant John Glass; Sergeant Stanley; and Deputies Scott Campau, Ajini, Duda, Dupuis, Masoya, Zaliwski, Cooney, Marszhke, Mada J., Medlow, Montgomery, Ibranovich and Lerwick. (Doc. 24, at ID 108.) Plaintiff asks the Court to subpoena each of these persons and that they be prohibited from "obstruct[ing] by obfuscation" the events of May 3, 2016. (*Id.*) Plaintiff also asks that all

6

parties involved and those with knowledge of the events on May 3, 2016, be held accountable. (Doc. 24, at ID 108-09.) Plaintiff also asks the Court to suspend but not terminate the action against Wickersham. (*Id.* at 106.) Plaintiff asks that his motions for injunctive relief be granted and that he be relocated to the William Dickerson Detention Facility in Hamtramck, Michigan. (*Id.* at ID 109.)

Plaintiff attaches an affidavit of facts to this motion specifically readdressing many of the allegations in his complaint. Plaintiff alleges that he was repeatedly denied access to the Macomb County Jail law library by Deputies Masoya, Zaliwski, Medlow, and Dupuis. (Doc. 24, at 111.) He states that his religious needs have been wrongfully denied, including religious materials, services, and dietary needs. (*Id.* at 112.) Finally, he alleges that he was regularly targeted for repetitious discipline and on May 3, 2016 Deputies Zaliwski, Medlow, Marszhke, Cooney, Montgomery, Mada J., Duda, and Sergeant Stanley assaulted him with malicious intent to commit murder. (*Id.* at 113.) Defendant has not filed a response.

### B.     Plaintiff's Motions to Amend

#### 1.     Motion to Amend Standards

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading once within 21 days after service or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." At all other times a party may amend its pleading only with the opposing party's written consent or leave of the court. Fed. R. Civ. P. 15(a)(2).

7

Eastern District of Michigan Local Rule 15.1 states that "A party who moves to amend a pleading shall attach the proposed amended pleading to the motion."

When a motion for leave to amend is before the court, Fed. R. Civ. P. 15(a) provides that "leave shall be freely given when justice so requires." *Id.* "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality," *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995), because leave to amend "is by no means automatic." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845-46 (5th Cir. 1992). The decision to grant or deny a motion to amend is left to the sound discretion of the district court. *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 591 (6th Cir. 1990).When determining whether to grant leave to amend, the court is to consider several factors:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). Courts may also consider whether the matters contained in the proposed amended complaint are unrelated to claims in the original complaint. *Hestep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001).

Amendment is futile if a proposed amendment would not survive a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and will

be granted if the plaintiff has failed "to state a claim upon which relief can be granted." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action . . . ." *Id.* When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

Each individual defendant can only be held accountable for his or her own actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) ("Each defendant's liability must be assessed individually based on his own actions.")

### 2.   **Plaintiff's First Motion to Amend** (Doc. 14)

Plaintiff's first motion to amend (Doc. 14) was filed on April 11, 2016. It seeks to dismiss Wickersham as a Defendant and add Operations Administrator Michelle Sanborn ("Sanborn"). Since Defendant's motion to dismiss was filed on March 31, 2016, Plaintiff's motion falls well within the 21 days in which he had to amend his motion as a matter of right. While *pro se* litigants are not entitled to a more lenient application of substantive law, "there is authority for the proposition that pleadings submitted *pro se* will be accorded a measure of leniency to assure that meritorious claims will not be dismissed for inartful draftsmanship." *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983) (citing *Haines v. Kerner*, 404 U.S. 519 (1972)). Thus although Plaintiff did not attach a copy of his proposed amended complaint as required by Local Rule 15.1, the Rule also provides that "[f]ailure to comply with this Rule is not grounds for denial of the motion." Therefore, I suggest that Plaintiff's first motion to amend should be granted, as a matter of right, and Plaintiff should be granted leave to dismiss Wickersham as a defendant and add Sanborn.

However, Federal law provides that:

> The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section [1983 of this title,] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the

action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted . . . .

42 U.S.C. § 1997e(c)(1). Likewise, the *in forma pauperis* statute provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).

Plaintiff's complaint alleges that he was "denied suitable access to the courts due to ineffective and insufficient legal materials." (Doc. 1, at ID 3.) Plaintiff asks the Court "[t]o order Anthony M. Wickersham to provide considerable access to [the] law library scheduling materials and legal website access with copying and printing capabilities." (*Id.* at Pg. ID 3-4.) Plaintiff fails to identify any specific action taken by Wickersham or any other party which resulted in the alleged violation of his rights. Thus, Plaintiff's complaint fails to state a claim against Wickersham because it fails to allege an affirmative link between the injury and Wickersham's conduct. Plaintiff's motion to amend seeks only to replace Wickersham with Sanborn as the defendant. This will not cure the complaint's deficiencies because Plaintiff does not allege that Sanborn's conduct or actions resulted in the alleged injury. Thus, Plaintiff's claim against Sanborn should be *sua sponte* dismissed for failure to state a claim.

### 3.    Plaintiff's Second Motion to Amend (Doc. 15)

Plaintiff second motion to amend was filed on April 12, 2016, the day after his first motion to amend. Thus Plaintiff's second amendment requires leave of court. Fed. R. Civ. P. 15(a)(2). Plaintiff's second motion to amend seeks to add the following defendants: Sanborn, Lieutenant Larry Duda, Sergeant Scott Schulte, Sergeant John Glass, Officers Campau, Ajini, Dupuis, Lerwick, and other unidentified officers. (Doc. 15, at ID 55.) Plaintiff also seeks to

suspend Wickersham as the principal party. (*Id.* at ID 56.) Plaintiff alleges that he was unable to identify the persons responsible prior to filing his second motion to amend because the Macomb's County Sheriff's Department conspired to deny disclosure of departmental structure. (*Id.*)

Plaintiff's second motion to amend suffers from the same deficiency as his first motion. Once again Plaintiff has failed to identify any particularized actions taken by Sanborn, Lieutenant Larry Duda, Sergeant Scott Schulte, Sergeant John Glass, Officers Campau, Ajini, Dupuis, Lerwick, and other unidentified officers. He has failed to allege that an affirmative link exists between their actions and the violation of his due process rights. Thus I suggest that amendment would be futile and Plaintiff's second motion to amend should be denied. Since I suggested that Plaintiff's first motion to amend should be granted as a matter of right I need not address Plaintiff's request to suspend Wickersham as a Defendant to this action.

### 4.      **Plaintiff's Third Motion to Amend** (Doc. 24)

Plaintiff's third motion to amend requires leave of court. *See* Fed. R. Civ. P. 15(a)(2). Plaintiff's third Motion to Amend seeks to (1) add allegations that his rights were violated on May 3, 2016; (2) add allegations that his religious needs have not been met; and (3) add Sanborn; Lieutenant Larry Duda; Sergeant Scott Schulte; Sergeant John Glass; Sergeant Stanley; and Deputies Scott Campau, Ajini, Dupuis, Masoya, Zaliwski, Cooney, Marszhke, Mada J., Medlow, Duda, Montgomery, Ibranovich and Lerwick (Doc. 24, at ID 108) as Defendants; and suspend but not terminate allegations against Wickersham. (Doc. 24.) The Court will address each of these in turn.

### a.    Allegations Regarding May 3, 2016

Plaintiff has not attached a proposed amended complaint to his motion. However in his attached affidavit of facts Plaintiff alleges that he "was regularly targeted for repetitious disciplines and on May 3rd 2016 Deputies Zaliwski, Medlow, Marszhke, Cooney, Montgomery, Mada J, Duda, and Sergeant Stanley" assaulted him resulting in multiple injuries. (Doc. 24, at ID 113.) Liberally construing Plaintiff's motion, it appears that Plaintiff intends to allege that his 8th amendment rights were violated on May 3, 2016. Plaintiff timely filed this motion within two months of the alleged incident, and could not have included this allegation in his previous motions to amend because they were filed before May 3, 2016. Moreover, accepting all of Plaintiff's allegations as true, I suggest that it would not be futile for Plaintiff to amend his complaint. Thus I suggest that Plaintiff should be permitted to amend his complaint to add an allegation that his eighth amendment rights were violated on May 3, 2016.

### b.    Allegations Regarding Deprivation of Religious Needs

Plaintiff also seeks to add allegations that his religious needs have been repeatedly denied. Plaintiff states that "the fact that my cultural religious needs require me to practice my religion to 'Galla' I am a Amharic, Cushitic, Ethopic, [sic] Hebrew, Isrealite [sic] and was repetitiously denied 'to date' the religious materials, services and dietary needs as required by culturally religious standards or Hebraic doctrine." (Doc. 24, at ID 112.) Plaintiff further elaborated on this allegation in his motions for injunctive relief stating that he had been denied "time and space for religious activities, pastoral or celebrant visits, community involvement,

13

observance of holy days and access to religious literature and study materials." (Doc. 17, at ID 67.)

Plaintiff's motion to amend does not specify when these alleged deprivations began, how long they have been occurring, how plaintiff has been deprived of his religious or cultural needs, or what persons were involved in the alleged deprivation. Nor does Plaintiff allege any particularized facts indicating what religious materials, services, or dietary needs he requires. Such vague conclusory allegations are insufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555. Thus I suggest that it would be futile for Plaintiff to amend his complaint to add this allegation and leave to amend should be denied.

### c.    Additional Party Defendants

Plaintiff's third complaint seeks to add the following Defendants: Sanborn; Lieutenant Larry Duda; Sergeant Scott Schulte; Sergeant John Glass; Sergeant Stanley; and Deputies Scott Campau, Ajini, Dupuis, Masoya, Zaliwski, Cooney, Duda, Marszhke, Mada J., Medlow, Montgomery, Ibranovich, and Lerwick. (Doc. 24.) Once again the issue here turns on whether Plaintiff has alleged sufficient particularized action by each person that he seeks to add as a Defendant to state a claim.

Plaintiff alleges that Deputies Masoya, Zaliwski, Medlow and Dupuis "constantly and capriciously denied" numerous requests by Defendant to receive access to the Macomb County Jail law library. Liberally construing Plaintiff's complaint this allegation is sufficient to create a reasonable inference that the actions of Deputies Masoya, Zaliwski, Medlow and Dupuis resulted in the violation of Plaintiff's due process rights. Thus I suggest that it would not be

14

futile for Plaintiff to amend his complaint to add Deputies Masoya, Zaliwski, Medlow and Dupuis.

Plaintiff alleges that Deputies Zaliwski, Medlow, Marszhke, Cooney, Montgomery, Mada J., Duda, and Sergeant Stanley assaulted him on May 3, 2016, "with the malicious intent to commit murder." (Doc. 24, at ID 113.) Thus I suggest that Plaintiff has pleaded sufficient facts to state a claim against Deputies Zaliwski, Medlow, Marszhke, Cooney, Montgomery, Mada J., Duda, and Sergeant Stanley, and he should be permitted to amend his complaint to add them as defendants.

Plaintiff's third amended complaint fails to describe with any particularity the conduct of the following persons: Sanborn; Lieutenant Larry Duda; Sergeant Scott Schulte; Sergeant John Glass; and Deputies Scott Campau, Ajini, Ibranovich, and Lerwick. Thus I suggest that Plaintiff has failed to state a claim against these persons and it would be futile to permit him to amend his complaint to add these persons.

### d.    Defendant Wickersham

Finally, Plaintiff's third motion to amend seeks to suspend but not terminate Wickersham as a party. (Doc. 24, at ID 107.) In light of the first motion to amend, which sought to terminate Wickersham as a party, the Court will read this as a motion to add Wickersham as a defendant. Plaintiff states that it would be "profoundly unreasonable" to assume that Wickersham "does not now, nor has he had previous knowledge[] regarding past and present accounts of the maladministrative [sic] malevolent, maleficent, malfeasance, and abusive misconducts and illegal and unconstitutional acts perpetrated by the staff of the

15

Macomb County Sheriff['s] Department employed within the Macomb County Jail." (*Id.*) Plaintiff also states that he has "strong reason to believe" that Wickersham "was instrumentally key" in "the orchestration and cover-up and conspiratorial collusion to cover up the premeditated attempted murder assault" on May 3, 2016. (*Id.* at ID 109.) However, Plaintiff does not specify how Wickersham was involved in the May 3 incident or any specific action taken by Wickersham which resulted in injury to Plaintiff. Thus I suggest that it would be futile to add Wickersham as a defendant and leave to amend should be denied.

      C.     **Wickersham's Motion to Dismiss**

I suggest that Wickersham's motion to dismiss should be denied as moot because Plaintiff's first motion to amend (doc 14) has been granted, and that motion sought to terminate Wickersham as a party.

      D.     **Motions for Injunctive Relief** (Docs. 16, 17, 18, 23)

          1.     **Preliminary Injunction Standards**

Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held. Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L. C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The same factors are considered in determining whether to grant a request for either a temporary restraining order or a preliminary injunction. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury

16

without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Certified Restoration*, 511 F.3d at 542. Courts have long held that "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

Preliminary injunctive relief is an extraordinary remedy that should be granted only if the movant carries his burden of proving that the circumstances clearly demand that relief. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Where a prison inmate seeks an order enjoining state prison officials, courts are required to proceed with the utmost care and must recognize the unique nature of the prison setting. *Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir. 1984). In addition, under 18 U.S.C. § 3626(a)(2), any "preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."

### 2. Law and Analysis

#### a. Likelihood of Success

Although Plaintiff's third motion to amend was filed after his motions for a preliminary injunction, the Court will generously consider the merits of his complaint after his third motion to amend in light of his *pro se* status. Plaintiff's complaint raises an Eighth Amendment excessive force claim which is placed at issue by his motions for a preliminary injunction.

To establish a claim of excessive force Plaintiff must show that (1) "'the officials act[ed] with a sufficiently culpable state of mine;'" and (2) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1 at 6 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). Plaintiff alleges that he was escorted to Holding Cell # 9 where several deputies kicked, punched, and beat him and an officer tasered him multiple times while he was lying on his stomach with his hands cuffed behind his back. (Docs. 17, 18, 19.) Defendant alleges that Plaintiff was escorted to Holding Cell # 9 due to a major rules infraction. (Doc. 22, at ID 92.) Once there, Plaintiff was tased once because he ignored instructions to stay on the ground after his handcuffs were removed and was attempting to rise "to turn on" one of the deputies. (*Id.*) Aside from Plaintiff's allegations, I find no evidence to suggest that the alleged wrongdoing amounted to a constitutional violation or that the officials acted with a sufficiently culpable state of mind. Thus, while Plaintiff's allegations are sufficient to withstand a *sua sponte* review for dismissal under 28 U.S.C. § 1915, Plaintiff has not met his heavy burden of demonstrating that he is likely to succeed on the merits.

### b.     Irreparable Harm

Plaintiff alleges that his life is in danger. However, he fails to present any evidence beyond vague, repetitious assertions that he has concluded that the guards want him dead because he has filed grievances against them. Plaintiff offers no particularized facts demonstrating that he faces any risk greater in degree or different in nature than that faced generally by prisoners in a county jail.

18

### c.       Harm to Others and the Public Interest

Plaintiff seeks a variety of relief, including an investigation and the filing of criminal charges; intercessory relief; and a transfer. First, assuming arguendo that no investigation had been conducted into the alleged assault on May 3, 2016, Plaintiff has no cognizable right to insist on a criminal investigation. *See, e.g.*, *Marshall v. Johnson*, 2005 U.S. Dist. LEXIS 9620 (W.D. Ky. May 19, 2005) (finding "no inherent constitutional right to have the FBI conduct an investigation"). The Court finds no case law indicating that the same is not true for criminal charges stemming from any investigation. Second, it is unclear precisely what relief Plaintiff seeks by Intercessory relief. If he seeks a transfer, this Court is without the power to effectuate that request absent extreme cases not raised here.

> Finally, this court is without authority to grant the requested transfer to federal custody. Although in extreme cases a federal court may order state officials to transfer a prisoner to a different facility to remedy a constitutional violation, such a power does not extend to order the state to transfer a prisoner to the federal prison system, or to requiring the federal prison system to accept the prisoner. "[W]hen a state has primary custodial jurisdiction over an inmate, a federal court cannot order the delivery of the defendant for service of a sentence in a federal institution. Such an order would be tantamount to a transfer of custody beyond the jurisdiction of the federal court." *Fisher v. Goord*, 981 F. Supp. 140, 176 (S.D.N.Y. 1997); *see also Moore v. Schuetzle*, 486 F. Supp.2d 969, 981 (D. N.D. 2007).

*Dunbar v. Caruso*, 2012 U.S. Dist. LEXIS 113465, 2012 WL 3308407, at *1 (E.D. Mich. Aug. 13, 2012) (denying plaintiff's motion for transfer to a federal prison); *see also Ragland v. Schneider*, 2013 U.S. Dist. LEXIS 39059, 2013 WL 782091, at *1 (E.D. Mich. Feb. 28, 2013) (noting that the court "does not have the authority to order the Michigan Department of Corrections ("MDOC") to transfer Plaintiff to a different facility"); *Quezada v. Fischer*, 2014

U.S. Dist. LEXIS 44646, 2014 WL 1289606, at *5 (N.D.N.Y. Mar. 31, 2014) ("Indeed, insofar as [plaintiff] seeks transfer to Federal custody such relief is inappropriate because the court lacks the authority to order the placement of a state prisoner into the custody of a federal agency."); *Robinson v. Andrews*, 2014 U.S. Dist. LEXIS 177283, at *5 (E.D. Mich. 2014) ("[T]his court lacks the power to order state officials to transfer plaintiff to federal custody.")

### E.  Conclusion

I therefore recommend that Plaintiff's motions for injunctive relief (Docs. 16, 17, 18, 23) be denied. Plaintiff's first motion to amend (Doc. 14) be granted. Plaintiff's claim against Operations Administrator Michelle Sanborn be *sua sponte* dismissed. Plaintiff's second motion to amend (Doc. 15) be denied. Plaintiff's third motion to amend (Doc. 24) be granted in Part and Denied in Part. Plaintiff should be granted leave to amend his complaint to add allegations that his eighth amendment rights were violated on May 3, 2016, and to add Deputies Masoya, Zaliwski, Medlow, Dupuis, Medlow, Marszhke, Cooney, Montgomery, Mada J., Duda, and Sergeant Stanley as Defendants. Plaintiff should be denied leave to add allegations regarding the deprivation of Plaintiff's religious needs, and to add Sanborn; Lieutenant Larry Duda; Sergeant Scott Schulte; Sergeant John Glass; and Deputies Scott Campau, Ajini, Ibranovich and Lerwick as defendants.

## III.  <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to

another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 29, 2016                     S/ PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent to Christopher Harris, II #150427 at Macomb County Jail, P.O. Box 2308, Mt. Clemens, MI 48043.

Date: July 29, 2016                                By s/Kristen Krawczyk
                                                   Case Manager to Magistrate Judge Morris